## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROLYN HORTON,**<br>*et al.,* | : |
| | : |
| **Plaintiffs,** | **CIVIL ACTION NO. 1:06-2338** |
| | : |
| **v.** | **(CONNER, D.J.)** |
| | :     **(MANNION, M.J.)** |
| **CITY OF HARRISBURG,**<br>*et al.,* | : |
| | : |
| **Defendants.** | : |

### REPORT AND RECOMMENDATION

On or about February 4, 2006, Corporal Raymond Lyda ("Lyda"), a Harrisburg police officer, chased, stopped, and sought to arrest Adeleno Jamar Oliver Horton ("Horton"). In the course of those events, Lyda shot Horton. In consequence of that single shot, Horton died. Thereafter, plaintiffs, the administrators of the estate of Horton brought a multi-count civil rights action against Lyda and other government defendants in the Court of Common Pleas, Dauphin County, Pennsylvania. Defendants removed the action to federal court. The gravamen of the complaint is that Lyda's use of deadly force was not justified. Defendants contest that conclusion. Currently before the Court is defendants' motion for summary judgment. Defendants' position is that Lyda used lawful force, notwithstanding the death of Horton, or, in the alternative, that Lyda is protected under qualified immunity.

For the reasons elaborated in detail below, the Court will **RECOMMEND GRANTING** in part, and **DENYING** in part defendants' motion for summary judgment.

## I.     FACTS AND PROCEDURAL POSTURE

After midnight, on or about February 4, 2006, Lyda, a Harrisburg police officer, was parked in a patrol car. From there he saw a car traveling in the wrong direction on a one-way street. Lyda gave chase. In the course of the chase, Horton stopped his vehicle in a parking lot after striking a parked car. Both Horton and Lyda exited their vehicles. Just after Lyda exited his vehicle, Lyda issued verbal commands to Horton to put his hands in the air. An altercation ensued. Lyda subdued Horton.

At this point, the uncontradicted evidence indicates that Horton reached into his coat and pulled out a handheld object, which turned out to be a cell-phone. Unable to make out the object, and thinking the cell-phone was a gun, Lyda pushed away from Horton, and fired *his* gun at Horton. One round entered Horton. Lyda called for medical assistance, but Horton was, nevertheless, declared dead at the scene.

On November 21, 2006, plaintiffs, the mother and father of the decedent, who are the administrators of Horton's estate, brought a civil rights action in the Court of Common Pleas, Dauphin County, Pennsylvania, (Doc. No. 6-2), against Lyda, and three other defendants: (1) Charles Kellar, who is Harrisburg's chief of police, (2) the city of Harrisburg, and (3) the Harrisburg Bureau of Police. The five-count complaint asserted claims under (1) 42 U.S.C. § 1983, asserting a violation of decedent's Fourth Amendment rights (the "Fourth Amendment claim"), (2) negligence, (3) the intentional infliction of emotional distress, (4) the Pennsylvania Wrongful Death Statute, 42 Pa. C.S.

§ 8301, and (5) the Pennsylvania Survival Action Statutes, 42 Pa. C.S. § 8302, 20 Pa. C.S. § 3373. Each count or theory of liability was asserted against all defendants.

Defendants filed a notice of removal on December 6, 2006. (Doc. No. 1.) Discovery has been taken. On August 15, 2008, defendants filed a motion for summary judgment, (Doc. No. 29), filed with a statement of undisputed material facts, (Doc. No. 30), a brief in support, (Doc. No. 31), and a voluminous appendix, (Doc. No. 32).

Plaintiffs filed a brief in opposition, (Doc. No. 35), a statement of undisputed material facts (including responses to defendants' statement of facts), (Doc. No. 43), and a voluminous appendix, (Doc. No. 42).

Defendants filed a reply brief, (Doc. No. 48), supplemental exhibits, (Doc. No. 47), and an answer to plaintiffs' statement of undisputed material facts, (Doc. No. 46).

## II.   STANDARD OF REVIEW

*Summary Judgment Standard*. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (Rehnquist, J.); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990) (Stapleton, J.). A factual dispute is genuine if a reasonable

jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (White, J.); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995) (McClure, J.). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249 ; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (Rendell, J.) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007) (Rendell, J.).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (Stapleton, J.); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (Ackerman, J.) (quoting

4

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)).

However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (Fisher, J.).

*Qualified Immunity Standard*. The common law privilege of qualified immunity protects a public official who has undertaken a discretionary act from suit "to protect [such officials] 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (Ginsburg, J.) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982) (Powell, J.)); *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) (Fuentes, J.) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

But the immunity may be overborne under a two-part analysis. First, the court entertaining a defendant's assertion of immunity examines whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (Kennedy, J.) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (Rehnquist, J.)), *overruled in part by Pearson v. Callahan*, No. 07-751, --- U.S. ----, 129 S. Ct. 808 (Jan. 21, 2009) (Alito, J.) (maintaining two-

part *Saucier* test, but permitting lower courts discretionary authority as to which element is to be examined first); *Wright*, 409 F.3d at 600. If the first inquiry establishes that no constitutional right has been violated, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201; *Wright*, 409 F.3d at 600. If the first inquiry establishes that a constitutional right was violated, the court will then proceed to the second part, which "asks whether the right was clearly established." *Saucier*, 533 U.S. at 201; *Wright*, 409 F.3d at 600. This requires the court to consider whether the "contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 201 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (Scalia, J.)).

## III.    ANALYSIS

A.    Is Defendant, The Harrisburg Bureau Of Police, Amenable To Suit Under Section 1983?

The Section 1983 count, like all counts in this action, is lodged against all defendants, including the Harrisburg Bureau of Police. Section 1983 liability only extends to "persons" as that term is controlled by statute (as interpreted by case law). *See* 42 U.S.C. § 1983 (extending liability to "[e]very *person* who, under color of any statute ... subjects, or causes to be subjected, any citizen ... to the deprivation of any right[]") (emphasis added). Defendants assert that the Harrisburg Bureau of Police is not a Section 1983 "person."[1] The Court agrees.

---

[1] Apparently, Plaintiffs do not contest defendants' legal position. *See* Plts' Opp'n Br. at 1 n.1 ("Plaintiffs acknowledge that the Harrisburg Bureau of Police

*See, e.g.*, *Texter v. Merlina*, Civ. A. No. 4-0173, 2005 WL 1513117, at *1-2 (M.D. Pa. June 27, 2005) (Conner, J.) (dismissing, under Rule 12(b)(6), a Section 1983 claim against a municipal police department).

      B.    Is Police Chief Kellar Entitled To Summary Judgment On The Fourth Amendment Claim?

In order to state a claim under Section 1983 against an officer in his individual capacity, a plaintiff must allege a deprivation of a constitutional or statutory right resulting from the defendant's conduct while acting under the color of state law. *See Arnold. v. New Jersey*, Civ. A. No. 3-3997, 2007 WL 1381757, at *4 (D.N.J. May 9, 2007). Respondeat superior cannot be the lone basis to establish Section 1983 liability, rather plaintiff must allege that the defendant had some personal involvement in the alleged wrongs. *See Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981) (Rehnquist, J.), *overruled on other grounds Daniels v. Williams*, 474 U.S. 327 (1986) (Rehnquist, J.). It is settled law that personal involvement can be shown through "allegations of personal direction or of actual knowledge and acquiescence [in the wrong].*" Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1998) (Rosenn, J.).

Defendants argue that Kellar was not involved in the actual events surrounding the alleged wrong, nor did he acquiesce in it after the fact. The gravamen of plaintiffs' response is that Kellar "instituted and maintained a defective ordinance and a host of policies, including an inveterate failure of

is an administrative agency of the City and as such is not a proper defendant to the *action*.") (emphasis added). (Doc. No. 35.) Plaintiffs' acknowledgment extends to this "action," not merely to the Section 1983 claim.

adequate training and supervision, that substantially contributed, and were a compelling force behind" the alleged Fourth Amendment violation. Plts' Opp'n Br. at 12-13, (Doc. No. 35); *id*. at 13 *et seq*. (alleging that Kellar had defective policies relating to: (1) what weapons (other than guns) were provided to the department's police officers,[2] (2) reporting procedures for individuals complaining about officers' conduct, (3) internal affairs investigations and public access to related files, (4) a failure to supervise Lyda after a similar prior incident, and (5) a failure to train Lyda in the use of non-deadly force). Simply put, none of plaintiffs' allegations meet the *Rode* standard, *supra*, requiring either "allegations of personal direction or of *actual* knowledge and acquiescence [in the wrong]" as a precondition to imposing liability against individual defendants.

However, although not briefed by the parties, it should be noted that there is a line of case law – although no binding Third Circuit authority[3] of which this

---

[2] Plaintiffs' allegation in regard to the department's weapons policies is unclear. At one point, plaintiffs suggest that "Kellar ... allowed Lyda ... to work without common items as pepper spray [etc.]", but at another point, plaintiffs suggest the policy was that "officers [were allowed] to select what types of restraints [they used]". It is unclear if plaintiffs' allegation is that Kellar failed to provide such weapons, or if Kellar simply failed to mandate or train officers in their correct use.

[3] *But cf. Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (Scirica, C.J.) (rejecting a Section 1983 failure to train claim against an individual supervisory officer, but suggesting in dicta that such a claim could succeed against a "supervising authority" where the plaintiff establishes a causal nexus between the specific training and the injuries incurred, and that the absence of "specific training [called for] reflect[s] a deliberate indifference to whether the alleged constitutional deprivations occurred") (quotation marks

Court is aware – holding that in addition to the *Rode* standard, *supra*, individual liability may be imposed on a supervisor under a standard closely akin to that for determining the imposition of liability against municipalities. In other words, "a supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff *must* demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts*. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation*." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (emphasis added) (citations omitted); *see also Nieves v. Dragovich*, Civ. A. No. 96-6525, 1997 WL 698490, at \*7 (E.D. Pa. Nov. 3, 1997) (quoting approvingly the *Andrews* standard for imposing individual liability under Section 1983). Assuming without deciding that *Andrews* correctly states the standard for imposing individual liability on supervisory officers under Section 1983, this Court finds that none of the allegations (and evidence in support of those allegations) put forward by plaintiffs establishes or tends to establish that Kellar was on actual notice that the monitoring, training, and supervision policies under his control were actually inadequate or were likely to

---

omitted). To the extent that the *Gilles* Court intended "supervising authority" to refer exclusively to municipal entities, it is entirely consistent with prior case law discussing *municipal*, not individual, liability grounded in failure to supervise and train. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989) (White, J.).

result in violations of rights protected under Section 1983.[4]

      C.     Is The Municipal Defendant, The City Of Harrisburg, Entitled To Summary Judgment On The Fourth Amendment Claim?

Municipal liability under Section 1983 requires that a plaintiff identify a policy or custom of the municipality or its agency which caused plaintiff's injury. *See* Colburn v. Upper Darby Twp*., 946 F.2d 1017, 1027 (3d Cir. 1991)* (Stapleton, J.). As stated in Section B, *supra*, plaintiffs allege any number of department policies, practices, and customs in regard to the training, supervision, and monitoring of Lyda and other Harrisburg police officers. Plaintiffs further allege that these policies *caused* the shooting and death of Horton, which amounted to a Fourth Amendment violation. Plaintiffs do more than make allegations – they put forward evidence. *See, e.g.*, McCauley Expert Report at 11-12 ("Had the HBP, in 2004 addressed these issues properly and provided Cpl. Lyda with corrective training, enhanced supervision, and positive discipline, as appropriate, it is more likely than not that his tactical conduct ... would have been substantially different and the need to use deadly force

---

[4] The Court notes plaintiffs' discussion of Dr. McCauley's report which makes allegations to the effect that Lyda "improperly discharged his weapon, less than 2 years before" the Horton incident. Plts' Opp'n Br. at 15 (citing expert report at 10-12). (Doc. No. 35.) Nothing at the cited pages in the expert report establishes that Kellar was on actual notice of this prior incident, on notice of the upshot of the internal investigation that followed, or on notice that then-current practices and policies were inadequate or would likely result in rights violations (of the type at issue here) if continued as practiced.

avoided.").[5] It is true that defendants put forward substantial evidence as to the propriety of the department's training, supervision, and monitoring. *See* Defs' Opening Br. at 15-16 (citing the record and certain undisputed facts). (Doc. No. 31.) However, the conflict here between defendants' evidence and plaintiffs' merely establishes that summary judgment is inappropriate and the resolution of disputed factual claims and the weight given to them should be left to the finder of fact. *Anderson*, 477 U.S. at 249 (holding that at the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

   D.    Is The City Of Harrisburg Entitled To Summary Judgment On The State Law Claims?

Defendants argue that under the Pennsylvania Political Subdivision Tort Claims Act,[6] the city defendant is immune, in regard to causes of action arising

---

   [5] To be clear, the Court notes that defendants' argument was predicated in plaintiffs' inability to identify a "policy, practice or custom of the City ... [that] caused their claimed constitutional inquiry." Plts' Br. at 15. Defendants have not argued that plaintiffs' allegations and evidence fail to establish a deliberate indifference to the decedent's rights. *See Carswell v. Borough of Homestead, 381 F.3d 235, 244-45 (3d Cir. 2004)* (Weis, J.) (analyzing the causation question and the deliberate indifference issue separately); *cf. id.* at 245 ("[W]e have never recognized municipal liability for a constitutional violation because of failure to equip police officers with non-lethal weapons. We decline to do so on the record before us" – a holding reached where "deliberate indifference" was contested).

   [6] 42 Pa. C.S. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee

under state law, from any damages liability – the only relief sought by plaintiffs. The Court agrees. *See Higgins v. Borough of Taylor*, 551 F. Supp. 2d 370, 378 (M.D. Pa. 2008) (Munley, J.) (holding that "[u]nder Pennsylvania law, municipalities enjoy a general immunity from suit") (citing 42 Pa. C.S. § 8541).

Furthermore, plaintiffs, who are *not* acting *pro se*, failed to respond to this argument in their opposition brief. *See* Plts' Opp'n Br. at 19 *et seq*. (arguing that the *individual* defendants face liability under the state law causes of action). Failure to respond constitutes waiver of the claim. *See Brown v. Johnson*, 116 Fed. Appx. 342, 345 (3d Cir. 2004) (Ambro, J.) (NOT PRECEDENTIAL) (holding that "Defendants respond that, though [plaintiff] raised equal protection and retaliation in his complaint and the District Court failed to address these matters, [plaintiff's] failure to raise them [in his opposition brief] at the summary judgment stage was a waiver. We agree."); *cf. Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983) (noting that "[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, *legal or factual*, why summary judgment should not be entered.") (emphasis added).

E.    Are The Individual Defendants Entitled To Summary Judgment On The Intentional Infliction of Emotional Distress Claim?

The tort of the intentional infliction of emotional distress (IIED) has not been expressly adopted by the Pennsylvania Supreme Court, although it has been adopted by the Superior Court. *See Toney v. Chester County Hosp*., 961 A.2d 192, 201 (Pa. Super. 2008). The Superior Court has held that:

---

 thereof or any other person.")

Whatever the Supreme Court eventually decides in this matter, we conclude that when an intentional infliction of emotional distress claim is dismissed upon demurrer, the appropriate legal standard to be applied in reviewing the claim is whether the complaint sufficiently pleads the claim in a manner that corresponds, "at a minimum," with the provisions of the RESTATEMENT (SECOND) OF TORTS, § 46(1) [One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.] Outrageous Conduct Causing Severe Emotional Distress.

*Reardon v. Allegheny College*, 926 A.2d 477, 487 n. 12 (Pa. Super. 2007), *appeal denied*, 947 A.2d 738 (2008). In other words, to state an IIED claim:

[T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society ... [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Reardon*, 926 A.2d at 488, *quoting Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (internal citation omitted). Furthermore, "reckless conduct causing emotional distress renders an actor as liable as if he had acted intentionally." *Pierce v. Penman*, 515 A.2d 948, 951 (Pa. Super. 1986), *appeal denied*, 529 A.2d 1082 (1987).

Defendants argue that Pennsylvania law requires the support of competent medical evidence to establish the mental injury. *See Bolden v. Southeastern Penn. Transp. Auth.*, 21 F.3d 29, 35 (3d Cir. 1994) (Lewis, J.) ("Under Pennsylvania law, expert medical evidence must be presented before a plaintiff can recover for intentional infliction of emotional distress."). However, controlling Pennsylvania law has intervened post-*Bolden*. In *Montgomery v.*

*Bazaz-Sehgal*, 798 A.2d 742, 751-52 (Pa. 2002), the Pennsylvania Supreme Court held that alleged emotional injuries which are "within the range of comprehension of jurors [as] to whether [the] emotional injuries might reasonably be attributable to the" alleged wrongful conduct do "not require an expert ...."[7]

Defendants also argue that the IIED claim must fail absent evidence of "malicious motivat[ion]" or "intention[al]" conduct by the individual defendants. But as explained above, reckless conduct is sufficient. *See Pierce, supra.* Because defendants misstated the law, they failed to address whether or not the individual defendants' conduct amount to recklessness – a standard less than intentional or malicious conduct.[8] Nor can the Court make an independent

---

[7] The Court acknowledges that defendants quite properly cited to federal district court cases – post-*Montgomery* – applying the requirement for competent medical evidence put forth in *Bolden*. However, none of those cases distinguished, applied, or even discussed *Montgomery*. As the Pennsylvania Supreme Court has spoken, this Court must faithfully apply state law as established by that court. *See generally* 2 Pennsylvania Suggested Standard Civil Jury Instructions § 13.03 (CIV), at 2 (3d ed. Supp. 2008) (noting that the "Pennsylvania Superior Court [in *Montgomery*] has also stated that expert medical testimony is not necessary in order to establish a claim for intentional infliction of emotional distress ... where the causal connection between the conduct and the injury is 'direct, obvious, and foreseeable'" and further noting that at the time the model instructions were published, *Montgomery* was on appeal to the Pennsylvania Supreme Court).

[8] Defendants in their brief argue that "Plaintiffs have not alleged the requisite conduct [i.e., malice or willful misconduct]. To the contrary, Plaintiffs have alleged, *at best*, negligent conduct ...." Plts' Opp'n Br. at 17-18. (Doc. No. 31.) This argument did not appear in the IIED section – rather it was directed to the *other* state law torts. Moreover, the argument was unsupported by any legal analysis or citations to the record: it was entirely conclusory.

assessment of the record to determine if defendants' conduct amount to recklessness because that would blind-side plaintiffs who never had an opportunity to explain why defendants' conduct amount to recklessness. The Court cannot address arguments defendants failed to make. Thus the IIED count should survive summary judgment.

F.     Are The Individual Defendants Entitled To Summary Judgment On the Remaining State Law Claims – Negligence, Wrongful Death, and Survival?

As to state law tort claims, it is not contested that police officers are immune from individual liability for acts within the scope of their employment to the same extent as their employing agency.[9] However, the immunity does not apply if the contested conduct involves "a crime, actual fraud, actual malice or willful misconduct ...." 42 Pa. C.S. § 8550. Here defendants argue that plaintiffs have failed to allege the requisite conduct, in that, "at best" plaintiffs have alleged negligence. Plaintiffs counter that the individual defendants conduct amount to "willful misconduct."[10] The Pennsylvania Supreme Court has

---

[9] 42 Pa. C.S. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."); Plts' Opp'n Br. at 17 (same); Defs' Br. at 19-20 (same).

[10] Plaintiffs also counter that the individual defendants conduct amount to "crime." However, plaintiffs fail to develop any substantial legal argument or articulate the factual basis in the record to support this position – or, even to indicate what particular crime would be involved. Throw away arguments in a brief are deemed waived. *See, e.g.*, 330 *West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000) ("A party's failure to address *or* develop a claim in its opening brief constitutes a waiver of that claim ...

described willful misconduct as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort'." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citation omitted) (quoting *King v. Breach*, 540 A.2d 976, 981 (Pa. Cmwlth. 1988)). More specifically, the *Renk* Court specifically held that reckless conduct does not meet this bar. *Renk*, 641 A.2d at 294.

Given that plaintiffs characterize Kellar's failure to supervise and train as "reckless disregard to citizens' rights," defendant Kellar is entitled to summary judgment on the negligence, wrongful death, and survival counts (that is wrongful death and survival grounded in an underlying negligence claim, as opposed to IIED). *See* Plts' Opp'n Br. at 22. (Doc. No. 35.)[11] Likewise even if all of plaintiffs allegations were proven at trial, they would not establish that Kellar

---

especially when they are represented by counsel.") (emphasis added); *Hadix v. Caruso,* Civ. A. No. 4:92-110, 2006 WL 2925270, at *3 n.2 (W.D. Mich. 2006); *see also Brown v. Johnson*, 116 Fed. Appx. 342, 345 (3d Cir. 2004) (Ambro, J.) (NOT PRECEDENTIAL); *cf. Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983).

[11] The Court again notes that defendants did not assert an affirmative defense to the IIED count grounded in Section 8550. Rather, in defending against the IIED count, defendants merely argued that plaintiffs failed to come forward with evidence satisfying the substantive *mens rea* element of an IIED claim. The latter can be satisfied by mere recklessness, notwithstanding that Section 8550 permits a state officer immunity from liability where his conduct is anything but intentional.

intended *the* harm or result brought about or that *this* result[12] was substantially certain to follow. Certainly plaintiffs' brief cites no evidence tending to establish the requisite level of intent.

As to Lyda, whatever other defenses he may have in regard to the state law claims, including negligence, it seems reasonably clear that Lyda was aware that Horton would be injured by his (Lyda's) firing his gun at Horton. Even if death was not substantially certain to follow, Lyda was aware that substantial injury would follow – that after all, even according to Lyda, was the purpose of his (Lyda's) using his weapon, i.e., to prevent Horton from aiming what appeared to be his (Horton's) weapon (although it turned out to be a cell phone) at Lyda. This is intentional conduct for the purpose of the state law causes of action.

> G.    Is Cpl. Lyda Entitled To Summary Judgment On The Fourth Amendment Claim?

Lyda's stopping and shooting Horton is a seizure for Fourth Amendment purposes. A Fourth Amendment seizure is lawful if it is supported by probable cause and if the amount of force used is reasonable in the circumstances. *See Edwards v. City of Philadelphia*, 860 F.2d 568, 572 (3d Cir. 1988)

---

[12] To the extent the contested conduct was reckless, it was arguably likely to lead to some harm accruing to some person. But if any harm arising from reckless conduct was characterized as "substantially certain to follow," then all such reckless conduct would amount to intentional conduct. Because only intentional conduct, as opposed to reckless conduct, falls under the aegis of Section 8550, it follows that an alleged defendant must be aware of the substantial likelihood of the *particular* harm, injury, or result connected to his alleged conduct.

17

(Higginbotham, J.). At the motion to dismiss stage, the court takes all the facts alleged in the light most favorable to the party asserting the Fourth Amendment injury. If the court finds there was no cognizable injury to plaintiff's Fourth Amendment rights, then that ends the inquiry, the seizure (including the amount of force used) is deemed lawful, and the count is dismissed. *See* Fed. R. Civ. P. 12(b)(6). At the summary judgment stage, the stage which is of interest here, where defendants seek summary judgment, all the facts and all the reasonable inferences from those facts are taken in the light most favorable to the party asserting the injury, but the plaintiff must come forward with evidence (not mere allegations) in regard to any contested fact that is material to plaintiff's Fourth Amendment claim. *See Scott v. Harris*, 5505 U.S. 372, 380-81 (2007) (Scalia, J.). If plaintiff should fail to meet its evidentiary burden, then that ends the inquiry, the seizure (including the amount of force used) is deemed lawful, and summary judgment is granted in respect to that count. *See* Fed. R. Civ. P. 56. *See generally Gruenke v. Seip*, 225 F.3d 290, 298-99 (3d Cir. 2000).

    If the plaintiff meets its evidentiary burden as to every contested material fact, the court will then[13] examine whether the defendant is protected by qualified immunity.

---

[13] The description of the order of inquiry in the main text of this Report and Recommendation is now a matter for the Court's discretion. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (Kennedy, J.) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (Rehnquist, J.)), *overruled in part by Pearson v. Callahan*, No. 07-751, --- U.S. ----, 129 S. Ct. 808 (Jan. 21, 2009) (Alito, J.) (maintaining two-part *Saucier* test, but permitting lower courts discretionary authority as to which element is to be examined first).

### 1.    Probable Cause

Lyda had probable cause to stop and arrest Lyda. It is uncontested that Lyda personally observed the decedent driving the wrong way in a one-way street. It is uncontested that Lyda personally saw the decedent's car strike a parked car while the decedent's car was being chased by Lyda's. *See* Defs' Br. at 8 (collecting infractions); Plts' Opp'n Br. at 6 (failing to deny that the decedent committed these wrongs, and arguing instead that they do not justify the use of deadly force). Whether these wrongs are characterized as traffic infractions or felonies makes no difference to the probable cause analysis – they are sufficient to establish that Lyda had probable cause to stop and arrest the decedent. *United States v. Delfin-Colina*, 464 F.3d 392, 399 (3d Cir. 2006) (Pollak, J.) ("In situations where an objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated the traffic-code provision cited by the officer, the stop is constitutional even if the officer is mistaken about the scope of activities actually proscribed by the cited traffic-code provision. Therefore an officer's Fourth Amendment burden of production is to (1) identify the ordinance or statute that he believed had been violated, and (2) provide specific, articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction.").

### 2.    Excessive Force

To be clear, the Court here does not answer the merits question (which is for the trier of fact) as to whether or not the amount of force (including deadly

force) used by Lyda was excessive. Rather, the question is whether under controlling Fourth Amendment law, plaintiffs have come forward with sufficient evidence to create a dispute calling for resolution by the trier of fact in regard to each contested fact which is material to establishing excessive force.

Defendants assert that Lyda's use of force, here deadly force, was not excessive. The core of defendants' position is that Lyda's use of deadly force was objectively reasonable in the circumstances. *See Scott v. Harris*, 550 U.S. at 381. Defendant argues

> While continuing to attempt to resist a lawful arrest by physically fighting with Cpl. Lyda, the decedent (1) took his hand off of the ground, and (2) reached inside his coat. Cpl. Lyda, fearing for his safety, pushed away from the decedent, and placed him at gunpoint. Upon seeing a uniformed officer pointing a handgun directly at him, instead of immediately ceasing his continued unlawful conduct [in resisting arrest], [Horton] for no apparent reason ... (1) pulled his hand out from under his coat, (2) and while holding a small dark object that was protruding from his index finger and thumb, extended his arm and hand directly toward Cpl. Lyda. It was only at that very moment, *that very second*, that again fearing for his safety, Cpl. Lyda fired a single bullet into the decedent. Cpl. Lyda aimed for the decedent's shoulder and not his head in an attempt to incapacitate the decedent but not to kill him – he wanted to eliminate the perceived deadly threat. The Defendant's expert has concluded that the shooting was justified. *Even the Plaintiff's expert has concluded that the shooting was justified*. SMF at 69-70.

Defs' Br. at 11-12 (omitting citations to the record).

Key to defendants argument is their claim that even plaintiffs' expert has concluded that Lyda's use of deadly force was "justified." *Id*. (citing Defs' Statement of Undisputed Material Fact at 69 (citing deposition of R. Paul McCauley (June 17, 2008))); *see also* Defs' Reply Br. at 11 & n.1 (same). At his deposition, McCauley testified as follows:

20

Q:      You're saying that Officer Lyda created the danger; therefore, he – he can't shoot?

A:      No. I'm just saying he has to shoot to save his life based on – on that part of the law.

Q.      Yes.

A:      But the problem, of course, is [Lyda] shot that guy because [Lyda] created the danger forcing him to shoot him – forcing the officer to shoot Mr. Horton. That's the problem.

Q.      Okay. So your criticism of the officer, sort of like a reviewing of the accident, is that he did something that created the danger?

A:      He created the danger, and he did – the totality of the circumstances analysis says –

Q:      Okay.

A:      – for the officer and for internal affairs investigation is where was the officer when he shot and why was he there. It's a tactical question. Did he create the danger?

Q:      Okay. Now –

A:      So if you want to just get through this and say right at the moment of the shoot –

Q:      Okay.

A:      – with the flowing motion of an object in his hand against Mr. Horton, it is my opinion that the officer had reason to shoot.

Q:      Okay.

A:      It was justified.

Q:      But the problem here is that [Lyda] created the danger?

A:      Yes.

Q:      And that's your criticism of Corporal Lyda?

A:      Yes.

McCauley Trans. at 62-63.

Although defendants characterize plaintiffs' expert as stating that the use of deadly force was "justified," the Court understands the expert differently. McCauley was stating that at the moment Horton removed his cell phone, Lyda's mistake-of-fact was objectively reasonable under those limited and precise circumstances. However, McCauley also indicated that Lyda used less than professional tactical judgment prior to and during the altercation. McCauley Trans. at 65 ("[Lyda] created a dangerous, deadly situation when he had

21

nonlethal options such as the baton and he didn't have them with him [on his person], because he chose not to. And that's not discretionary."). In other words, McCauley took the position that the use of deadly force was not justified under the totality of the circumstances. It was justified only on the precise facts at the immediate moment of the shooting.

Thus the parties do not dispute (merely) a *factual* question – i.e., how much force was actually used. Rather, the parties dispute the *legal* standard for evaluating whether a given amount of force was excessive. Defendants argue:

> [W]hile Plaintiffs' expert opines that the "'reasonableness' analysis in determining the validity of the use of force should take into account the actions or inactions that contributed to creating the threat[,]" his opinion is presently not shared by the United States Supreme Court.... Moreover, the Fourth Amendment does not prohibit "creating unreasonably dangerous circumstances in which to effect a legal arrest of a suspect." *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992). "The Fourth Amendment prohibits unreasonable *seizures* not unreasonable, unjustified or outrageous conduct in general." *Id*. *See* [1] *e.g.*, *Tom v. Voida*, 963 F.2d 952, 956 (7th Cir. 1992); *Cameron v. City of Pontiac*, 813 F.2d 782, 784 (6th Cir. 1987). "Therefore, pre-seizure conduct is not subject to Fourth Amendment scrutiny." *Carter*, 973 F.2d at 1332.

Defs' Reply Br. at 11-12. Defendants' legal analysis is partially correct: the Supreme Court of the United States has not addressed the question at issue here – the relevance of pre-seizure conduct to the Fourth Amendment excessive force inquiry, and the Sixth and Seventh Circuits have determined that such pre-seizure conduct is irrelevant. However, the Third Circuit has opined on this precise substantive question in the procedural context of a summary judgment motion. The Third Circuit held:

> [W]e want to express our disagreement with those courts which have held that analysis of "reasonableness" under the Fourth

22

Amendment requires excluding any evidence of events preceding the actual "seizure." *See, e.g.*, *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) ("we scrutinize only the seizure itself, not the events leading to the seizure"); *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) ("pre-seizure conduct is not subject to Fourth Amendment scrutiny."); *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (*quoting Bone* and *Carter*).

> ....
> We reject the reasoning of *Bone*, *Carter*, and *Bella* because we do not see how these cases can reconcile the Supreme Court's rule requiring examination of the "totality of the circumstances" with a rigid rule that excludes all context and causes prior to the moment the seizure is finally accomplished. "Totality" is an encompassing word. *It implies that reasonableness should be sensitive to all of the factors bearing on the officer's use of force.*
>
> A more fundamental point is that it is far from clear what circumstances, if any, are left to be considered when events leading up to the shooting are excluded. How is the reasonableness of a bullet striking someone to be assessed if not by examining preceding events?

*Abraham v. Raso*, 183 F.3d 279, 291 (3d Cir. 1999) (Cowen, J.) (emphasis added); *cf. id*. at 295 ("[C]ourts have found [in some situations] that the officer's acts creating the need for force are important in evaluating the reasonableness of the officer's eventual use of force.").[14] Under the legal standard established

---

[14] *But cf. Grazier v. City of Philadelphia*, 328 F.3d 120, 127 (3d Cir. 2003) (Ambro, J.) (suggesting – in the context of an appeal disputing jury instructions and the application of the plain error standard – that the Third Circuit has recognized the dispute among the circuits as to the relevance of pre-seizure conduct to a Fourth Amendment claim, and noting that the Third Circuit has not adopted any position on this question). *Grazier'*s procedural posture, post-trial, is distinguishable from that of the instant litigation, a pre-trial motion for summary judgment. While the majority in *Grazier* stated, that the Third Circuit had not adopted a settled rule as to the relevance of pre-seizure conduct, this is not so clear. *See, e.g.*, *id*. at 129 (Becker, C.J., dissenting) (noting that "In *Abraham v. Raso*, 183 F.3d 279 (3d Cir.1999), we established, as a general matter, the relevance of officers' pre-seizure conduct to determining whether use of force during the seizure is excessive. *Raso* left open, however, the question of how much weight an *officer's* unreasonable creation of danger

by the Third Circuit, one admitting the relevance of officer pre-seizure conduct to determining excessive force, there exists a genuine issue of material for the trier of fact to decide. Plaintiffs' expert – Dr. McCauley – disputes the propriety of Lyda's tactical decisions leading up to his use of deadly force. Thus summary judgment should not be granted on the Fourth Amendment claim.

Furthermore where, as here, the only remaining live witness to the underlying events[15] is the officer because the officer has killed the decedent, the

---

should be given in the calculus of whether the officer's use of force was ultimately reasonable under the Fourth amendment."). To the extent, if any, that *Grazier*'s holding would displace *Abraham*'s holding *sub silentio*, this Court (like the panels of the Third Circuit) is controlled by *Abraham*, the decision of the prior panel. *See  Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir.1996) (Garth, J.) ("Although a panel of this court is bound by, and lacks authority to overrule, a [precedential] decision of a prior panel, a panel may reevaluate a precedent in light of intervening authority and amendments to statutes or regulations.") (citation omitted); *Hittle v. Scripto-Tokai Corp.*, 166 F. Supp. 2d 142, 151 n.2 (M.D. Pa. 2001) (McClure, J.) (applying prior panel rule to district court proceedings).

[15] Even if the facts surrounding the underlying events are not clearly disputed, whether or not the officer's conduct was reasonable in the circumstances is disputed here. That determination – the reasonableness of the officer's conduct – is a mixed question of law and fact, and, as such, is generally ill-suited for summary judgment. *See* Abraham, 183 F.3d at 289-90:

> Because we are applying this standard on a summary judgment motion, we must address to what extent questions of "reasonableness" can be resolved on summary judgment. Reasonableness under the Fourth Amendment resembles tort law in its attention to how a specific, concrete circumstance should affect an officer's judgment. This sensitivity to context suggests that regardless of whether objective reasonableness invokes a different and heightened standard from negligence, reasonableness under the Fourth Amendment should frequently

Court should take care not to overstep its bounds and to usurp the jury's fact-finding role. *Id.* at 294 ("[S]ince the victim of deadly force is unable to testify, courts should be cautious on summary judgment to ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story – the person shot dead – is unable to testify. The court may not simply accept what may be a selfserving account by the officer.") (brackets, quotation marks, and citation omitted).

Lastly, the Court notes that although the Third Circuit has advocated caution in regard to granting summary judgment in circumstances such as that at issue here, where the defendant-officer is the only remaining witness to the underlying events, the Third Circuit has also expressly held: "this admonition does not alter the requirement that a party opposing summary judgment must present *affirmative* evidence ... and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." *Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (Greenberg, J.). Here there is no genuine dispute as to Lyda's testimony – he has repeatedly testified that he cannot remember what verbal commands, if any, he issued to Horton at the time of the altercation (i.e., at the time immediately prior to his firing the fatal shot), although Lyda

> remain a question for the jury. To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of "reasonableness" is itself reasonable and widely shared.

could remember issuing commands to Horton at the time he, Lyda, exited his police car. There is no dispute as to what Lyda can now remember. *See* Lyda Trans. at 30, 41-43, 46; Reply Br. at 8-9. But there is a dispute as to what actually happened at the time Lyda shot Horton. *See Presley v. Pepersack*, 228 F. Supp. 95, 102 (D. Md. 1964) (drawing inferences from an inability of a police officer to remember the source of a list, where he could remember the source of a closely related newspaper clipping). Moreover, defendants do not dispute that this is a material fact in regard to determining whether or not Lyda used excessive force in the circumstances.

      3.    Qualified Immunity

      The Court quotes in full the defendants' brief's discussion of Lyda's qualified immunity claim.

> Cpl. Lyda should be entitled to qualified immunity for his actions. The question is not whether the use of excessive force violates clearly established law – that much we know – the use of excessive force to affect [sic] an arrest *does* violate clearly established law. Rather, the correct question is would an objectively reasonable officer under the same circumstances *know* that *his actions* would violate the clearly established law? In this case, no objectively reasonable officer would know that firing a single bullet into the decedent *under the same circumstances* would be considered an excessive use of force and therefore violate the clearly established law. Therefore, even if the Court were to find that a constitutional right has been violated, Cpl. Lyda should be entitled to qualified immunity for his actions.

Defs' Br. at 13. There is no explanation of what precisely are the relevant facts or circumstances for the purposes of making the qualified immunity determination. There is no application of the law to the facts. There are no analogies to extant cases applying this standard. Indeed, there are no citations

to any cases at all. In short, this is a mere conclusory argument summarizing the abstract legal standard and, without more, asserting that the movant is entitled to summary judgment based on qualified immunity. Throw away arguments do not establish an entitlement to relief. *See supra* note10 (collecting authority). *But see* *Carswell*, 381 F.3d at 241-44 (granting summary judgment on officer's qualified immunity claim).

## IV.   CONCLUSION

For the reasons elaborated above, the Court **RECOMMENDS GRANTING** in part, and **DENYING** in part defendants' motion for summary judgment.

Specifically, **IT IS RECOMMENDED THAT**:

(1) Summary judgment be **GRANTED** in favor of the Harrisburg Bureau of Police and that the Harrisburg Bureau of Police be **TERMINATED** from this action;

(2) Summary judgment be **GRANTED** in favor of Kellar on the Fourth Amendment Claim;

(3) Summary judgment be **DENIED** the City of Harrisburg on the Fourth Amendment Claim;

(4) Summary judgment be **GRANTED** in favor of the City of Harrisburg on the state law claims;

(5) Summary judgment should be **DENIED** the individual defendants on the intentional infliction of emotional distress claim;

(6) Summary judgment be **GRANTED** in favor of Kellar in regard to the

negligence claim and in regard to any wrongful death or survival claim grounded in negligence;

(7) Summary judgment should be **DENIED** Lyda in regard to the negligence claim, wrongful death claim, and survival claim;

(8) Summary judgment should be **DENIED** Lyda in regard to the Fourth Amendment Claim;

and,

(9) the District Judge should set this matter for trial at his convenience.

**s/** *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: March 9, 2009**

O:\shared\REPORTS\2006 Reports\06-2338-01.wpd

28