IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAROLYN HORTON and ADELENO OLIVER**, Administrators of the estate of Adeleno Jamar Oliver Horton, | : : : : : | **CIVIL ACTION NO. 1:06-CV-2338** (Judge Conner) |
| **Plaintiffs** | : : | |
| v. | : : | |
| **CITY OF HARRISBURG, THE HARRISBURG BUREAU OF POLICE, CHARLES KELLAR**, and **RAYMOND LYDA**, | : : : : : | |
| **Defendants** | : | |

## MEMORANDUM

This is a civil rights action filed by plaintiffs Carolyn Horton and Adeleno Oliver as administrators of the estate of Adeleno Jamar Oliver Horton ("Horton") against the City of Harrisburg ("the City") and several members of its police force, including the Harrisburg Bureau of Police[1], Chief of Police Charles Kellar ("Kellar"), and Corporal Raymond Lyda ("Lyda"). Presently before the court are objections (Docs. 50, 52) to the report of the magistrate judge recommending that defendants' motion for summary judgment be granted in part and denied in part.

---

[1] Defendants contend, (see Doc. 31 at 4-5), and plaintiffs agree, (see Doc. 35 at 1 n. 1), that the Harrisburg Bureau of Police is not a proper defendant because the Bureau has no legal existence apart from the City. Accordingly, the magistrate judge recommended that all claims against the Harrisburg Bureau of Police be dismissed. (See Doc. 49 at 6.) The court will adopt this recommendation and grant summary judgment in favor of Harrisburg Bureau of Police on all claims.

Following an independent review of the record, the court will adopt this recommendation in part and reject it in part.

I.  **Statement of Facts**[2]

This case arises from an incident between Lyda and Horton on February 4, 2006. (Doc. 30 ¶ 17; Doc. 43 ¶ 17.) At approximately 2:00 a.m., Lyda observed a vehicle driven by Horton traveling in the wrong direction down a one way street. (Doc. 30 ¶ 18; Doc. 43 ¶ 18.) Lyda began to follow the vehicle in his police cruiser at which time Horton attempted to flee. (Doc. 30 ¶ 26; Doc. 43 ¶ 26.) During the chase, Horton struck a parked car, disabling his vehicle. (Doc. 30 ¶ 28; Doc. 43 ¶ 28.) Lyda alleges that he exited his police cruiser and approached the passenger side of Horton's vehicle to prevent Horton from escaping on foot. (Doc. 32, Ex. 7 at 30.) Lyda then claims that Horton attempted to exit through the passenger side door. (Id. at 33-34.) Plaintiffs allege that Lyda gave no verbal commands to Horton during Horton's flight of the vehicle or during the subsequent events. (See Doc. 35 at 6.) After Horton had fully exited the car, a physical altercation ensued during which Lyda positioned Horton on his hands and knees on the ground. (Doc. 32, Ex. 7 at 40-41, 45-46.) Lyda contends that Horton reached into his coat pocket and pulled out a small dark object between his thumb and index finger. (Id. at 45-48.) Lyda, believing the object was a weapon, drew his

---

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, as the nonmoving party. See infra Part II.

firearm and shot one round at Horton, hitting him in the shoulder. (Id. at 51-54.) Horton collapsed on the ground and was pronounced dead by medical responders approximately forty minutes later. (Doc. 35, Ex. A.) Investigators subsequently discovered that Horton had been attempting to remove a cellular telephone from his pocket at the time Lyda discharged his weapon. (Doc. 32, Ex. 10 at 6.)

Plaintiffs brought this suit in the Court of Common Pleas for Dauphin County, Pennsylvania on November 21, 2006. (Doc. 1, Ex. A.) They seek to hold all defendants liable under 42 U.S.C. § 1983 for violation of Horton's Fourth Amendment right to be free from excessive force. (See id. at 6.) They also advance state law claims for negligence, wrongful death, survival, and intentional infliction of emotional distress ("IIED") . (See id. at 9-14.) Defendants filed a notice of removal on December 6, 2008. (Doc. 1.) The magistrate judge recommends that the court grant summary judgment on all claims except (1) the Fourth Amendment claim against Lyda, (2) the Fourth Amendment claim against the City, (3) all state law claims against Lyda, and (4) the intentional infliction of emotional distress claim against Kellar. (See Doc. 49.) Both plaintiffs and defendants have filed objections to the magistrate judge's report. (See Docs. 50, 52.) The issues addressed therein have been fully briefed and are ripe for disposition.

**II.    Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

**III.    Discussion**

Plaintiffs assert excessive force, municipal liability, and supervisory liability claims pursuant to § 1983. They also advance state law claims for negligence, wrongful death, survival, and IIED. The court will address these claims *seriatim*.

**A.    Liability for Excessive Force under 42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code offers private citizens a means of redress for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

4

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or statutory right by a person "acting under color of state law."[3] Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the instant case, plaintiffs allege that Lyda violated Horton's Fourth Amendment right against excessive force when he fatally shot Horton in February 2006. Additionally, plaintiffs assert that Kellar and the City are liable for these violations because they fostered a policy or custom of failing to train and supervise their officers to prevent the excessive use of force.

### 1. **Individual Liability Against Lyda**

Every citizen has a Fourth Amendment right to be free from excessive force during lawful arrests. See Kopec v. Tate, 361 F.3d 772, 776-78 (3d Cir. 2004). To avoid running afoul of the Fourth Amendment, an officer may exercise only an "objectively reasonable" degree of force in effectuating an arrest. Id. In determining whether an officer's conduct was reasonable, a court looks to the

---

[3] Defendants apparently do not dispute that, during the alleged incidents, the City police officers were "acting under color of state law."

"totality of the circumstances." See Graham v. Connor, 490 U.S. 386, 397 (1989). Specific factors to consider when evaluating reasonableness include: (1) the severity of the crime, (2) the immediate threat that the suspect posed to the officer's safety, (3) whether the suspect was actively resisting the arrest, and (4) the number of suspects with whom the officer had to contend at one time. Gravely v. Speranza, 219 F. App'x 213, 215 (3d Cir. 2007); see also Saucier v. Katz, 533 U.S. 194, 205 (2001). The issue of reasonableness is a mixed question of fact and law that should frequently be reserved for the jury. See Estate of Smith v. Marasco, 318 F.3d 497, 516 (3d Cir. 2003) (citing Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) ("Since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared.")). However, summary judgment may be entered if the court concludes, "resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Abraham, 183 F.3d at 290.

Defendants argue that Lyda was objectively reasonable in shooting Horton. (See Doc. 31 at 10-12.) They contend that the totality of the circumstances establishes that Lyda acted reasonably and that he properly exerted deadly force upon Horton. (See Doc. 31, Ex. 10.) Plaintiffs contest that Lyda was not reasonable in using deadly force against the decedent because use of such force is only proper when a suspect presents a threat of serious bodily injury. (Doc. 35 at 5-7.) Because

6

Horton was not armed, plaintiffs contend that no such threat existed and thus Lyda was unreasonable in shooting Horton. (Id.)

Reviewing the facts in the light most favorable to plaintiffs, the court concludes that reasonable jurors could reach differing outcomes when evaluating the propriety of Lyda's use of force. Lyda shot Horton after he observed Horton reach into his coat pocket to retrieve an object later determined to be a cellular phone. (See Doc. 32, Ex. 7 at 12-13.) Horton was not armed, he had not committed a violent crime, and he had not brandished a weapon during his flight from Lyda. Additionally, Lyda allegedly failed to issue any verbal commands to Horton during the arrest even though he had ample time to give warnings. (See id. at 11; Doc. 35 at 6.) Jurors could find that the failure to issue warnings made Lyda's actions unreasonable. Furthermore, Lyda purportedly failed to comply with the use of force policy, which requires officers to aim for the center of a suspect's body when discharging a firearm. (See Doc. 35 at 6.) Plaintiffs assert that Lyda aimed for Horton's shoulder, demonstrating that he used his weapon to apprehend Horton rather than to protect himself against a threat of deadly force. (Id.) Jurors could find that Lyda unreasonably believed that Horton posed an imminent threat to his safety and that he acted inappropriately when he apprehended Horton by relying on deadly force. Accordingly, the court will adopt the magistrate judge's

recommendation and will deny summary judgment with respect to the Fourth Amendment claim against Lyda.[4]

## 2. **Municipal Liability**

Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1948 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). However, a

---

[4]In the alternative, Lyda raises the defense of qualified immunity as an argument compelling summary judgment. (See Doc. 31 at 5-6, 12-13.) Qualified immunity protects a law enforcement officer who has committed constitutional violations if the plaintiff's rights were not "clearly established" when the officer acted. See Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 815 (2009). Application of qualified immunity implicates two distinct inquiries. The first inquiry evaluates whether the defendant violated a constitutional right. Saucier, 533 U.S. at 201-02, abrogated in part by Pearson, --- U.S. ---, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). If the defendant did not commit a constitutional infraction, the court must dispose of the claim in defendant's favor. Saucier, 533 U.S. at 201. However, if the defendant committed a constitutional violation, the second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted. Pearson, --- U.S. ---, 129 S. Ct. at 815-16; Saucier, 533 U.S. 201-02. The officer is amenable to suit only if "it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Curley, 499 F.3d at 207 (quoting Saucier, 533 U.S. at 202). When the issue of qualified immunity requires resolution of factual disputes, the court must defer consideration of immunity until a jury resolves the factual issues. Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006). In the instant matter, a jury must determine whether Lyda believed Horton was retrieving a weapon at the time he shot Horton, whether Lyda's actions deviated from standard police protocol, whether Lyda responded proportionately to Horton's attempt to evade arrest, and whether Lyda concluded that Horton posed a risk of serious harm at the time of the incident. These issues must be addressed before the court can conclude the qualified immunity analysis. Therefore, the court will deny summary judgment to Lyda on the basis of qualified immunity and reserves judgment on this defense until applicable factual determinations have been made by the jury.

8

municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)*)*. A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)).

A municipality may be liable for constitutional violations that result from inadequate training or supervision of its employees if the failure to train constitutes a custom of the municipality. The failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Deliberate indifference is a difficult standard for a plaintiff to satisfy in the failure-to-train context. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). It requires that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). The plaintiff must demonstrate that the municipality's "*deliberate* conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). "A need for training or other corrective action to avoid imminent deprivations of a

constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Strauss v. Walsh, No. Civ.A. 01-3625, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002); Garcia v. County of Bucks, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001). Recovery also requires that the failure to train be "closely related to the ultimate [constitutional] injury." Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005).

In the instant case, plaintiffs contend that the City acted with deliberate indifference toward Horton's constitutional rights by failing to supervise and train Lyda about the proper use of force, thereby creating a custom of approving of the use of excessive force. (See Doc. 35 at 15.) Plaintiffs rely upon a prior firearm incident in which Lyda participated to establish this custom. (Id.) In 2004, Lyda discharged his weapon to puncture the tires of a vehicle operated by a purse snatcher that Lyda was pursuing. (Id.) Lyda fired his weapon even though the vehicle allegedly posed no imminent threat of harm to him, violating the use of force policy. (Id.) Plaintiffs claim that Lyda's alleged history of using his service weapon improperly should have alerted the City to his need for remedial firearm training. (Doc. 35, Ex. B at 9.) Defendants respond that they trained Lyda in accordance with police department policies and that they therefore cannot be held liable for Lyda's actions under § 1983. (See Doc. 31 at 16.)

Reasonable jurors reviewing plaintiffs' evidence could conclude that the City's failure to respond to Lyda's improper discharge of his weapon with corrective training establishes deliberate indifference under § 1983. First, the failure to train

satisfies the tripartite test articulated in Beck and Carter. See Beck, 89 F.3d at 972-73; Carter, 181 F.3d at 357. The City knows that its officers confront situations that may require the use of deadly force, that such situations often involve difficult decisions on the part of the officers about whether to discharge a weapon, and that excessive force liability will frequently result if officers discharge their weapons inappropriately. Second, plaintiffs have provided evidence that Lyda improperly relied upon deadly force approximately two years prior to the incident with Horton and that the city did not subject him to remedial training for this infraction. A reasonable jury could find that a more rigorous training regimen would have prevented Lyda from firing the bullet that killed Horton. Accordingly, jurors could conclude that the City was deliberately indifferent to training its officers on the proper use of excessive force. Hence, defendants' motion for summary judgment on the Fourth Amendment claim against the City will be denied.

### 3. Supervisory Liability

Supervisory liability under § 1983 utilizes the same standard as municipal liability. See Iqbal, --- U.S. at ---, 129 S. Ct. at 1948; Carter, 181 F.3d at 356. Therefore, a supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights. See Carter, 181 F.3d at 357. In order to establish supervisory liability, a plaintiff must show that (1) a superior officer failed to employ a specific supervisory practice, (2) the existing custom created an unreasonable risk of injury in the absence of the specified supervisory practice, (3) the supervisor was aware

that the risk existed, (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the failure to employ the supervisory practice. Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2005) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Plaintiffs claim that Kellar is liable for the alleged Fourth Amendment violation by Lyda because Kellar failed to provide Lyda with remedial training following the 2004 incident with the purse-snatcher. (See Doc. 35 at 13.) They contend that Kellar knew of the initial incident because he signed an internal investigation report conducted after the shooting and maintained a custom of failing to train because he did not provide additional training to Lyda. (Id.) Defendants respond that the report concluded that Lyda acted appropriately and that Kellar had no reason to question the accuracy of this conclusion. (Doc. 31 at 14.)

Plaintiffs have not presented sufficient evidence to establish a prima facie case of supervisory liability. See Sample, 855 F.2d at 1118. Although Kellar possessed knowledge about the prior incident, (see Doc. 32, Ex. 12 at 44-45), plaintiffs have not set forth evidence showing that Kellar was aware of any conclusion or finding that Lyda had committed a violation of police protocol. Unlike the City, which investigated Lyda's conduct, Kellar merely reviewed an investigation report, that absolved Lyda of wrongdoing. (See id. at 45-46.) Kellar had no reason to doubt the propriety of this conclusion. Accordingly, plaintiffs have

failed to establish a supervisory liability claim against Kellar. Summary judgment will be granted in his favor with respect to the supervisory liability claim.

### B. State Tort Claims

Plaintiffs also assert state law claims for negligence, wrongful death, assault, battery,[5] and IIED against the defendants. Under the Pennsylvania Political Subdivision Tort Claims Act, "no local agency shall be liable for any damages . . . caused by an act of the local agency or an employee thereof or any other person."[6] 42 PA. CONS. STAT. § 8541. Accordingly, the City possess immunity from state tort liability, and summary judgment will be granted in its favor with respect to the state tort claims. The court thus turns to the liability of Kellar and Lyda .

#### 1. Kellar's Liability

Police officers are immune from state tort liability for acts within the scope of their employment except when the alleged conduct involves "a crime, actual fraud, actual malice, or willful misconduct . . . ." See id. § 8550. Willful misconduct "has been defined . . . [as] conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow. . . . In

---

[5]The claims of assault and battery appear in plaintiff's complaint under the heading "survival." (See Doc. 1, Ex. A at 13.) The Pennsylvania survival statute does not create an independent cause of action. It merely preserves any claim a decedent could have brought before death and allows the decedent's fiduciary to prosecute the claim on behalf of decedent's estate. See 20 PA. CONS. STAT. § 3373; 42 PA. CONS. STAT. § 8302. In the matter *sub judice*, the torts of assault and battery provide relief under state law for the harms of which plaintiffs complain.

[6]The statute provides several exceptions to this governmental immunity, none of which apply to the present matter. See 42 PA. CONS. STAT. § 8542(b).

13

other words, the term willful misconduct is synonymous with the term 'intentional tort.'" Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). Defendants argue that Kellar lacked the knowing mental state necessary to commit an intentional tort and is therefore immune from liability for the negligence, wrongful death, assault, battery, and IIED claims. (See Doc. 31 at 18.) Plaintiffs have not established that Kellar's alleged failure to train was an intentional means of depriving citizens of their constitutional rights. See supra Part III.A.3. They have likewise failed to demonstrate that Kellar knew that the alleged failure to train Lyda would lead to the death or emotional distress of arrestees such as Horton. See id. Accordingly, Kellar retains immunity for his acts, and the court will enter summary judgment in Kellar's favor on all of the state law claims.

### 2. Lyda's Liability

Plaintiffs allege claims under state law against Lyda for negligence, wrongful death, assault, battery, and IIED. Defendants argue that Lyda also lacked the knowing mental state necessary for the claims to proceed.

#### a. Negligence, Wrongful Death, and Survival

Lyda possesses immunity from liability for acts that constitute unintentional torts. See 42 PA. CONS. STAT. § 8550; Renk, 641 A.2d at 293. Therefore, Lyda is entitled to immunity for the negligence claim. See Hernandez v. York County, 288 F. App'x 781, 783 (3d Cir. 2008) (upholding dismissal of negligence claim against municipal employee was proper). In contrast, the claims of wrongful death, assault, and battery seek recovery for intentional misconduct. Plaintiffs have supported

these claims with evidence that Lyda's intention in shooting his gun was to disable Horton from using deadly force against Lyda. (See Doc. 25 at 21.) The court finds that a reasonable jury could conclude that Lyda acted intentionally and that his conduct is therefore beyond the reach of immunity. Summary judgment will be denied with respect to the wrongful death, assault, and battery claims against him.

**b.    Intentional Infliction of Emotional Distress**

Finally, in order to sustain a claim for IIED, the plaintiff must establish that: (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress, and (4) the resultant emotional distress was severe.[7] Brufett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982). For an IIED claim to survive, the court[8] must be satisfied that the defendant's alleged misconduct is so extreme and outrageous that it "go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized society." Strickland v. University of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997). Conduct that courts have deemed sufficiently outrageous to constitute IIED includes: (1) killing the plaintiff's son

---

[7] The Pennsylvania Supreme Court has not formally recognized a cause of action for IIED. Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000); Toney v. Chester County Hosp., 961 A.2d 192, 201 (Pa. Super. Ct. 2008). Nevertheless, the court has indicated that if it were to recognize such a cause of action, a plaintiff would, at minimum, need to allege the elements set forth above to prevail. Id.

[8] In Pennsylvania, the element of outrageousness has long been regarded as an issue of fact initially reserved for the court. Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

with an automobile and then burying the body, rather than reporting the incident to the police, see Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998); (2) intentionally fabricating documents that led to the plaintiff's arrest for murder, see id.; (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease, see id.; and (4) a police officer shooting a traffic violator without cause or justification, see Moser v. Bascelli, 865 F. Supp. 249, 253 (E.D. Pa. 1994).

In the instant matter, a reasonable jury could conclude Lyda acted intentionally when he shot Horton in order disable him.  Additionally, the alleged use of force by Lyda as a means of apprehending Horton is sufficiently extreme and outrageous for plaintiff's IIED claim to proceed.  An unjustified shooting by a police officer of a person who is on his hands and knees on the ground, and who had committed only minor crimes, constitutes the sort of atrocious behavior actionable through an IIED claim.  Finally, a reasonable jury could find that being shot unwarrantedly by a police officer would cause severe emotional distress.  Accordingly, the motion for summary judgment will be denied on the cause of action for IIED against Lyda.

## IV. Conclusion

For the foregoing reasons, the court will adopt in part and reject in part the report and recommendation of the magistrate judge.  The court will grant defendants' motion for summary judgment with respect to: (1) all claims against the Harrisburg Bureau of Police, (2) all claims against Kellar, (3) all state law claims

16

against the City, and (4) the state law claim of negligence against Lyda.  Defendants' motion for summary judgment will otherwise be denied.

An appropriate order will issue.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: July 23, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROLYN HORTON** and **ADELENO OLIVER**, Administrators of the estate of Adeleno Jamar Oliver Horton, : : : : : **Plaintiffs** : : v. : : **CITY OF HARRISBURG, THE HARRISBURG BUREAU OF POLICE, CHARLES KELLAR**, and **RAYMOND LYDA**, : : : : : **Defendants** : | **CIVIL ACTION NO. 1:06-CV-2338** **(Judge Conner)** |

## <u>ORDER</u>

AND NOW, this 23rd day of July, 2009, upon consideration of the magistrate's report and recommendation (Doc. 49), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The report (Doc. 49) of the magistrate judge is ADOPTED in part and REJECTED in part as follows:

    a. The report is REJECTED insofar as it recommends that the motion for summary judgment be denied on the state law claim of negligence against Raymond Lyda and the intentional infliction of emotional distress claim against Charles Kellar.

    b. The report is ADOPTED in all other respects.

2. The motion for summary judgment (Doc. 29) is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED with respect to the following claims:

        i. All claims against the Harrisburg Bureau of Police;

        ii. All claims against Charles Keller;

        iii. All claims arising under state law against the City of Harrisburg; and

        iv. The state law claim for negligence against Raymond Lyda.

    b. The motion is DENIED in all other respects.

3. The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

4. A revised pretrial and trial schedule shall issue by future order of court.

                                                  S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge